THE CAPE COMPANY, A PARTNERSHIP, APPELLEE, V. JOHN A. WIEBE, TRUSTEE, ET AL., APPELLANTS, V. KIRKHAM-MICHAEL, INC., A CORPORATION, INTERVENER-APPELLEE.
JOHN A. WIEBE, TRUSTEE, APPELLANT, V. SEARS, ROEBUCK & CO. ET AL., APPELLEES, V. KIRKHAM-MICHAEL, INC., A CORPORATION, INTERVENER-APPELLEE.
241 N. W. 2d 830

Filed May 19, 1976. No. 40379.

Thomas Marshall of Green, Marshall & Green, and Terrance A. Hogan, for appellants.

Michael F. Kinney and John C. Foxley of Cassem, Tierney, Adams & Gotch, for appellees and intervener-appellee.

Heard before WHITE, C. J., SPENCER, McCOWN, NEWTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

NEWTON, J.

This is an action for an injunction to enjoin the defendant John A. Wiebe, Trustee, from interfering with an access road and utility lines serving plaintiff's property. Interests of Kirkham-Michael, Inc., and Sears, Roebuck & Co. are also in issue. Judgment was generally against the defendant and in favor of plaintiff and other parties. We affirm the judgment of the District Court.

Kirkham-Michael, Inc., hereinafter referred to as K-M, was the owner of a tract of approximately 10

acres. A Sears, Roebuck & Co. store, hereinafter referred to as Sears, was constructed on a portion of this tract which was subsequently conveyed to The Cape Company, hereinafter referred to as plaintiff. K-M desired the development of the property as a shopping center and solicited the advice and assistance of John A. Wiebe for this purpose. The balance of the 10-acre tract was subsequently conveyed to Wiebe by warranty deed. An electric power line easement ran across the premises at a point on Wiebe property adjacent to the property line. Without permission from the power company, buildings could not be placed on the easement but subterranean structures could be. In developing the property K-M placed storm and sanitary sewers and a gas line on this easement. Two paved access drives were constructed, one on plaintiff's property and one on Wiebe's property. Wiebe is interested in several enterprises and at various times dealt with K-M in the name of Wiebe Construction Company, Wiebe Enterprises, and John A. Wiebe. Wiebe Construction Company constructed the Sears building and the utilities in question were placed on the land by K-M during the period of construction.

At the outset, a statement of intent, dated March 15, 1963, was entered into between K-M and John A. Wiebe in behalf of Wiebe Construction Company. It provided, in substance, that in development of the tract Wiebe Construction Company should do all construction work and K-M should be the architect. Wiebe Construction Company further agreed to become "owner, developer and contractor" on the balance of the land. It further provided: "It is recognized that since the plans and specifications are not completed and that the contract is not drawn, good faith of both parties will be relied on in carrying out the intent of this Agreement."

After completion of the Sears building, and the installation of utilities and access driveways, in 1964, Wiebe obtained consent to construct a building under the power

line and objected that the underground utility lines interfered with his desire to construct a building connected with the Sears building. He demanded removal of the sewer and gas lines from the land then owned by him and objected to the access driveway on his land. In 1972 he constructed a fence shutting off this access road and part of the parking facilities on his property. Plaintiff brought this action to enjoin Wiebe from interfering with access or utility-line rights of the Plaintiff.

After acquiring title to the property adjacent to the Sears store, Wiebe conveyed it to the present owner John A. Wiebe, Trustee. He filed a general denial and a cross-petition praying for a determination that plaintiff had no easements on the Wiebe property; that plaintiff be enjoined from interfering with the use of his property; that plaintiff be required to relocate its gas and sewer lines; and that title be quieted. In its answer to the cross-petition of Wiebe, plaintiff alleged that the utility lines were completed prior to execution of the deeds to Wiebe and the access road was to be used jointly, that the utility lines do not prohibit the commercial development of the Wiebe property, and that the statute of limitations had run.

Intervener K-M in its petition alleged that the conveyance to plaintiff included an implied grant for utility lines and access drive which was known to Wiebe when he acquired title and he is estopped to deny the existence of the easements; and that the conveyances to Wiebe of the subservient estate included an implied reservation of the easements necessary to the enjoyment of the dominant estate. In answering the Wiebe cross-petition, K-M asserted the defenses of laches and the statute of limitations, and denied that the utility lines prevent commercial development of the Wiebe property. Wiebe for answer and by way of cross-petition to the pleading of K-M set out the covenants in his deeds, stated he gave only temporary permission to use his property for parking and access, and that their continued use, together

with the presence of the utility lines, constituted a trespass. Intervener K-M and plaintiff deny the allegations of the Wiebe answer and cross-petition.

John A. Wiebe was an experienced developer of commercial properties. It is evident that he intended to develop the tract in conjunction with the K-M development of the Sears portion of the tract. He obtained an option to purchase that portion of the tract not used by Sears on September 4, 1963. The option was exercised in December 1963 and the property conveyed in March 1964. Wiebe was active in trying to interest other commercial institutions in the property and thus secure its development. In March 1964, at the time Wiebe received title, he was aware of the construction of a paved access road across his property to U. S. Highway Nos. 73-75 constructed by K-M. K-M also caused the sewer and gas lines to be constructed on the power-line easement as building on the easement did not appear feasible. The evidence indicates that all parties contemplated that there would be joint use of access roads, parking facilities, and utility lines. In the absence of such an understanding, it is inconceivable that K-M would have gone to considerable expense to construct such facilities where located or to have conveyed to Wiebe land upon which such facilities were located. It is likewise inconceivable, considering Wiebe's active interest in the development of the property, that he was unaware of the location of these facilities. It is apparent that he was interested in the joint operation of the property and knowingly permitted the construction of these facilities at considerable expense to K-M. It is also evident that they cannot now be relocated without great damage and expense to plaintiff. In this regard we are in agreement with the judgment and findings of the trial court. As an equity case we hear it de novo but with due regard for the rule that: "When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion with-

out reference to the findings of the district court. Where in such a case the trial court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Satterfield v. Dunne, 180 Neb. 274, 142 N. W. 2d 345. In the present case the District Judge did view the property.

From March 26, 1963, when the statement of intent was signed, to 1972, Wiebe failed to assert his rights, except for a letter written in 1964 after construction was completed. His actions, or failure to act, resulted in the construction of the disputed facilities as located and the dependency of the Sears building thereon. As heretofore mentioned, removal of the sewer and gas lines and restrictions on access and parking facilities would result in very considerable damage and harm to plaintiff. Under such circumstances we hold that Wiebe is now barred by laches from recovery in this action. "Independently of any limitation for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief because of laches where it is sought after undue and unexplained delay, and when injustice would be done in the particular case by granting the relief asked." Dewey v. Dewey, 163 Neb. 296, 79 N. W. 2d 578. See, also, Bend v. Marsh, 145 Neb. 780, 18 N. W. 2d 106.

Furthermore, it is generally recognized that insofar as a covenant against encumbrances is concerned, an easement is an encumbrance. See, 20 Am. Jur. 2d, Covenants, Conditions, Etc., § 90, p. 653; 21 C. J. S., Covenants, § 101, p. 957. A covenant against encumbrances is broken when made if an encumbrance exists. See, 20 Am. Jur. 2d, Covenants, Conditions, Etc., § 83, p. 646; 21 C. J. S., Covenants, § 98, p. 954. It is the rule in

this state that: "An action for damages, for the breach of the covenants of warranty contained in a deed conveying land, is an action upon a specialty, within the meaning of the 10th section of the Code of Civil Procedure, and may be brought at any time within five years after the cause of action shall have accrued." Kern v. Kloke, 21 Neb. 529, 32 N. W. 574. See, also, Campbell v. Gallentine, 115 Neb. 789, 215 N. W. 111, 61 A. L. R. 1; Johnson v. Hesser, 61 Neb. 631, 85 N. W. 894. The Wiebe deeds date back to March 1964, more than 5 years before action was brought. Section 25-205, R. R. S. 1943, provides that an action on a specialty can only be brought within 5 years. An action for trespass must be brought within 4 years. See, § 25-207, R. R. S. 1943. Wiebe seeks to avoid the effect of these rules by contending that an encumbrance also comprises a breach of the covenants as to seisin and quiet enjoyment and that the statute has not run as to these covenants. To so hold where a deed contains a specific covenant against encumbrances would present an anomalous situation and defeat the existing law in this jurisdiction as set forth in the statute and the cases above cited. We hold that where a covenant against encumbrances and covenants of warranty or quiet enjoyment appear in the same instrument they are separate and independent covenants and one does not embrace the other.

In view of the foregoing, it is not necessary to consider other arguments advanced by the parties. The judgment of the District Court is affirmed.

AFFIRMED.